48

No. 19,225.

Mary Ann Lamirato, et al. *v.* O. C. Kinney, Inc., et al.
(349 P. [2d] 562)

Decided February 23, 1960.

Mr. George T. Ashen, for plaintiffs in error.

Mr. Harold Clark Thompson, Mr. Louis Schiff, Mr. Alois Rockett, Mr. Fred B. Dudley, for O. C. Kinney, Inc., and State Compensation Insurance Fund.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for Industrial Commission of Colorado.

*In Department.*

Opinion by Mr. Justice Day.

Plaintiffs in error are the surviving dependents

of a deceased employee of defendant in error O. C. Kinney, Inc. To the claim filed by them for death benefits under the Workmen's Compensation Act, a referee of the Industrial Commission entered findings and an order, which were adopted by the Commission as its own, denying the claim.

On review the district court affirmed the Commission. In order to assert ground for reversal, plantiffs in error contend that the Commission and the court erred as a matter of law.

Question to be Determined.

*Were the findings and conclusions of the Commission, resulting in an order denying the claim, determinations of law or of fact?*

We hold that the determinations were purely questions of fact.

No better summary of the case could be set down than that given by the referee in his findings and order, which we set forth verbatim:

"The decedent, on September 6, 1957, while working, was stricken with a massive sub-arachnoid hemorrhage at about 1:30 p.m. He died September 8, 1957, leaving dependent upon him his widow, Mary Ann Lamirato, and minor children, Laura Lee, Monty Robert, and Anthony Eugene Lamirato. His average weekly wage was $128.00.

"The Referee finds from the testimony that the decedent, a man twenty-five years of age, had, prior to the summer of 1957 and for several years past, been steadily employed as a sheet metal worker. He worked evenings and weekends upon his residence property and regularly engaged in swimming and bowling. He did at times, when tired, complain of headaches but seldom took medication for them, as it did not seem to relieve him. He normally retired between 11:00 p.m. and 1:00 a.m.

"During August of 1957 he complained of headaches almost daily. During the last three weeks of his life he developed a tendency to become sleepy early in the eve-

ning, retiring between 8:30 p.m. and 9:00 p.m. During the summer he was employed at the Arapahoe Plant (Public Service Company) installing metal lagging over insulation. This lagging consisted of sheets of eighteen gauge metal 3' x 10' weighing sixty-eight pounds each. Normally in installing full sheets two men handled the sheet, working from a scaffold.

"On September 6, 1957 decedent was working alone cutting and fitting metal from such sheets for a door 18" x 24" and in fitting metal around the door in the course of the morning's work he would have lifted not more than four of the 3" x 10" [sic] sheets from the catwalk on which he was working to a point about four feet above the catwalk. He then cut these pieces to fit the requirements of the job with the usual tools of a sheet metal worker. During the lunch hour from 12: noon to 12:30 p.m. he ate lunch with two fellow employes who were working nearby. He returned to work at 12:30 p.m. About fifteen minutes later he came back up to his fellow employes complaining of a headache. He went back to work and again returned to them complaining of headache in approximately fifteen minutes. He again returned to work and after ten or fifteen minutes (about 1:15 p.m.) they saw him coming up the stairs again with his hands on his head saying: "my head, my head." He collapsed as they reached him and was taken, with the assistance of a third employe, to an elevator and thence to the ground, evidently semi-conscious. He was taken immediately to the hospital.

"September 6, 1957 was a very warm day and the boilers over which and near which the men were working added to the heat.

"Medical testimony is that a sub-arachnoid hemorrhage results from an aneurysm, i.e. an arterial dilitation due to pressure of blood on weakened tissues. These weakened tissues are in the nature of diverticuli — small sacs or pouches in the walls of a canal or organ; in this case one of the branches of the arteries of the sub-

arachnoid region of the brain. This condition exists from a prenatal defect and an aneurysm may occur at any age, although a person with such defect may live a normal span of years and die from other causes. Death may occur during sleep or periods of no exertion. It frequently occurs in the case of athletes during periods of maximum exertion. Decedent's repeated headaches were in all probability due to increasing weakness in the arterial diverticulum. Medical testimony is to the effect that high temperatures at the working place would not have been the cause of such rupture, since overheating tends to take blood from the brain to the extremities and this would reduce pressure in the arteries in the brain.

"There is no evidence that the decedent exercised maximum exertion prior to his attack or that, in the course of his work, he was subject to any overexertion which might be said to constitute accidental overexertion. The decedent on the day and at the time of his attack was performing the normal duties of his trade.

"The Referee, therefore, finds that the decedent's last illness and death were not the result of accidental injury arising out of and in the course of his employment.

"The Referee further finds that, considering all the testimony as to the decedent's condition prior to the onset of his fatal attack, the decedent's last illness and death resulted from a ruptured diverticulum, a congenital condition existing in an artery in the brain, and that such rupture of the diverticulum was not caused by accidental injury.

"IT IS, THEREFORE, ORDERED: That this claim for compensation by reason of the death of Robert E. Lamirato, be, and the same hereby is denied.

"IN WITNESS WHEREOF, the Industrial Commission of Colorado has caused these presents to be duly executed this 30th day of December, A. D. 1957."

The ultimate fact determined by the Commission is that there was no industrial accident within the meaning and intent of the Workmen's Compensation law. This

determination is supported by the record, made entirely by the claimant. As we view it there was no evidence that would have supported any other conclusion.

 Under the oft-repeated rule, so familiar that the citation of authorities is now considered surplusage, the finding of the Commission, being supported by the record, will not be disturbed on review.

Accordingly, the judgment is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE MOORE concur.